# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| INTERNATIONAL EQUIPMENT TRADING, LTD., | )<br>)<br>) |
| Plaintiff, | )<br>) No. 17 C 5010 |
| v. | ) Hon. Marvin E. Aspen<br>) |
| ILLUMINA, INC., | )<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff International Equipment Trading, Ltd. ("IET") alleges Defendant Illumina, Inc. ("Illumina") engaged in predatory and anticompetitive behavior that violated federal antitrust law and Illinois state law. (Am. Compl. (Dkt. No. 21) ¶ 1.) Presently before us are three pending motions. First, Illumina has filed a motion to dismiss IET's amended complaint in its entirety. (Pl's Mot. (Dkt. No. 23).) Second, IET has filed a motion to strike Illumina's affirmative defenses under Federal Rule of Civil Procedure 12(f). (Pl.'s Mot. to Strike (Dkt. No. 27).) Third, Illumina filed a motion requesting we postpone briefing on IET's motion to strike pending our ruling on its motion to dismiss. (Def.'s Mot. to Postpone (Dkt. No. 30).) For the following reasons, we grant Illumina's motion to dismiss in part and deny in part, and dismiss Counts I through V without prejudice. We also deny Illumina's motion to postpone briefing on IET's motion to strike as moot, and order briefing on IET's motion to strike. Illumina may file a response to IET's motion to strike Illumina's affirmative defenses and IET's supporting brief on or before March 16, 2018, and IET may file a reply brief on or before March 30, 2018.

**BACKGROUND**

For the purposes of a motion to dismiss, "we accept the well-pleaded facts in the complaint as true." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). IET, an Illinois corporation with its principal place of business in Vernon Hills, Illinois, sells and leases laboratory equipment to laboratories, hospitals, and research institutions across the United States and internationally. (Am. Compl. ¶¶ 2, 11.) As part of its business, IET sources various models of used or refurbished genome sequencing unit systems ("sequencing units") manufactured by Illumina. (*Id.* ¶¶ 2, 5.) Illumina manufactures "integrated systems" that "serve the sequencing, genotyping and gene expression markets" and sells its used sequencing units in competition with IET. (*Id.* ¶¶ 3–4.)

IET alleges that beginning in or around 2007, once Illumina learns of a possible sale or lease by IET of a refurbished Illumina sequencing unit, Illumina engages in "scare tactic[s] . . . intended to kill the sale or lease between the customer and IET." (*Id.* ¶ 7.) Specifically, IET alleges Illumina informs IET's potential customers that they must pay a significant "site licensing fee" for operation and data collection software needed to operate a used Illumina sequencing unit purchased from IET. (*Id.* ¶¶ 5–6.) IET claims Illumina has discretion in charging the fee, sometimes charges the fee for machines exempt from site licensing fees based on a preexisting contract, and only threatens the fee to interfere with sales from "third party resellers like IET." (*Id.* ¶¶ 7–8, 17–18.) IET further alleges Illumina refuses to service sequencing units purchased from IET when the purchasers do not pay Illumina the site licensing fee. (*Id.* ¶¶ 8, 18.) Based on these allegedly anti-competitive tactics, IET alleges Illumina "has unlawfully attempted to create a monopoly within the secondary sequencing unit market over

[Illumina] sequencing units." (*Id.* ¶ 9.) As a result, IET has lost sales, including the sale of a HiSeq 4000 Illumina sequencing unit to the University of Central Florida. (*Id.* ¶ 19.)

IET's amended complaint alleges Illumina violated various antitrust laws, and asserts attempted monopolization claims under Section 2 of the Sherman Act, 15 U.S.C. § 2 (Count I); Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a), 26 (Count II); and the Illinois Antitrust Act ("IAA"), 740 ILCS 10/1 *et seq.* (Count V). IET claims Illumina's "predatory and anticompetitive conduct" in charging site licensing fees has been an attempt to "drive IET and other third-party resellers from the . . . sequencing unit markets and thereby strengthen its dominant position within these markets." (*Id.* ¶ 29.)

IET's amended complaint also includes claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*,. ("ICFA") (Count III) and Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 *et seq.*, ("UDTPA") (Count IV) based on Illumina's willful engagement in "deceptive trade practices" and "unfair conduct." (*Id.* ¶¶ 37–45.) IET additionally includes a claim for intentional interference with a prospective economic advantage ("intentional interference") (Count VI), alleging Illumina intentionally and maliciously interfered with customers with whom IET had a "reasonable expectancy of completing sales and/or leases of refurbished sequencing units." (*Id.* ¶¶ 49–51.) Finally, IET seeks a declaratory judgment pursuant to 28 U.S.C. § 2201(a) declaring Illumina cannot legally charge or threaten to charge site licensing fees to IET customers who purchase used Illumina sequencing units. (*Id.* ¶¶ 52–59.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs Illumina's motion to dismiss. "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the

merits." *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990) (internal citation omitted). When considering a motion to dismiss under Rule 12(b)(6), we accept as true all well-pleaded facts alleged in the complaint and view them in the light most favorable to the plaintiff. *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). While "detailed factual allegations" are not required to survive a motion to dismiss, the complaint must "state a claim [for] relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949–50 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). While the plaintiff need not plead "detailed factual allegations," the complaint must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. However, to protect defendants from expensive discovery, "[i]n a complex antitrust . . . case a fuller set of factual allegations . . . may be necessary to show that the plaintiff's claim is not largely groundless." *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008) (internal citation omitted).

## ANALYSIS

### I. Attempted Monopolization Claims (Counts I, II, and V)

We first consider whether IET sufficiently pled its antitrust claims to survive a Rule 12(b)(6) motion to dismiss. Our analysis focuses on the requirements of the Sherman Act,

4

as IET's Clayton Act and IAA claims "stand or fall with the Sherman Act Claim."[1] *Int'l Equip. Trading, Ltd. v. AB SCIEX LLC*, No. 13 C 1129, 2013 WL 4599903, at *3 n.3 (N.D. Ill. Aug. 29, 2013). To succeed in an attempted monopolization claim under Section 2 of the Sherman Act, a plaintiff must prove a defendant (1) engaged in predatory or anticompetitive conduct, (2) specifically intended to acquire monopoly power, and (3) reached a stage based on defendant's actions and market position where there is a dangerous probability defendant will achieve an actual monopoly. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456, 113 S. Ct. 884, 890–91 (1993); *Attempted Monopolization*, Holmes & Mangiaracina, Antitrust Law Handbook § 3:6.

Illumina argues IET's antitrust claims must be dismissed because IET failed to plead any non-conclusory facts to establish that Illumina has a dangerous probability of establishing monopoly power. (Def.'s Mem. in Support of Mot. to Dismiss ("Mem.") (Dkt. No. 24) at 15–17.) A dangerous probability of establishing a monopoly in a particular market requires more than allegations of merely "unfair or predatory conduct"; instead, "the antitrust plaintiff must also prove the defendant has market power in a relevant market" and that the "market power will tend to approach monopoly power if the alleged unlawful conduct remains unchecked." *Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, 669 F. Supp. 2d 895, 900–01 (N.D. Ill. 2009) (citing *Spectrum Sports*, 506 U.S. at 457,

---

[1] IET's Clayton Act claim depends on the survival of its Sherman Act claim because Sections 4 and 16 of the Clayton Act merely establish a private right of action for any person injured by a violation of the Sherman Act. 15 U.S.C. § 15; *see also* Am. Compl. ¶ 36 (incorporating the Sherman Act attempted monopolization claim into the Clayton Act claim). Furthermore, Section 2 of the Sherman Act controls interpretation of the relevant section of the IAA. *See Nucap Indus., Inc. v. Robert Bosch LLC*, 273 F. Supp. 3d 986, 1010 (N.D. Ill. 2017) ("'Because § 3(3) of the Illinois Antitrust Act was modeled upon § 2 of the Sherman Act, Illinois courts apply federal antitrust law to resolve questions arising under the state statutory provision,' so the Rule 12(b)(6) analysis of [the Illinois Antitrust Act claims] collapses into the question of whether Nucap has stated a claim under § 2 of the Sherman Act.") (internal citation omitted)).

113 S. Ct. at 891; *DSM Desotech Inc. v. 3D Sys. Corp.*, No. 08 C 1531, 2009 WL 174989, at *7 (N.D. Ill., Jan. 26, 2009)). Courts regularly find pleading the defendant's share of the relevant market sufficient to allege this element at the pleading stage. *Walter Kidde*, 669 F. Supp. 2d at 901; *see also Avnet, Inc. v. Motio, Inc.*, No. 12 C 2100, 2015 WL 425442, at *6 (N.D. Ill. Jan. 30, 2015) (finding an allegation that defendant controlled 95% of a market sufficient to survive a motion to dismiss); *Hon Hai Precision Indus. Co. v. Molex, Inc.*, No. 08 C 5582, 2009 WL 310890, at *3 (N.D. Ill. Feb. 9, 2009) (dismissing attempted monopolization claim under the Sherman Act for failure to plead dangerous probability of achieving a monopoly, noting that "the extent of [defendant's] worldwide share in the relevant market . . . would allow the Court to infer that [defendant] threatens or even has the capacity to obtain monopoly power"). Lack of "competition in the relevant market" also suggests a dangerous probability of establishing a monopoly. *Hon Hai*, 2009 WL 310890, at *3.

IET has failed plead the dangerous proximity of monopoly element of attempted monopolization because IET has not identified any facts that establish Illumina's market power in the relevant secondary market of refurbished Illumina sequencing units.[2] (Am. Compl. ¶¶ 14, 24.) The only non-conclusory facts in IET's amended complaint establishing Illumina's market control involve the market of new sequencing units: IET alleges "Illumina controls approximately 65% of the market for *new* sequencing units." (*Id.* ¶ 16 (emphasis added).) This information is irrelevant to IET's market control in the used Illumina sequencing unit market, a market IET itself argues is entirely distinct from the market for new

---

[2] Illumina argues IET's proposed market of used Illumina sequencing units fails because IET did not allege facts establishing one of the "rare circumstances" needed to establish a single-brand product market. (Mem. at 12–14.) For the purposes of our analysis, we assume the validity of the market without deciding whether IET met its burden of establishing the existence of a single-brand market.

Illumina sequencing units based on the "enormous price differential between new and used models." (*Id.* ¶ 14.) Furthermore, IET acknowledges the existence of a number of competitors in the used sequencing unit market, which in itself suggests Illumina does not have a dangerous proximity of monopoly power. (*Id.* ¶ 31 ("IET is one of fewer than five companies in the United States and Canada who sell Illumina's sequencing units in the secondary markets.")); *see, e.g.*, *Hon Hai*, 2009 WL 310890, at *3.

We cannot consider IET's remaining allegations about Illumina's market power in the relevant market as they are all conclusory. *McCauley*, 671 F.3d at 616 ("[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. After excising the allegations not entitled to the presumption, we determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'") (citing *Iqbal*, 556 U.S. at 681, 129 S. Ct. at 1951). In its amended complaint, IET repeats general statements about Illumina's market control that merely repeat the dangerous proximity element of attempted monopoly. For example, IET states "Illumina maintains substantial market power in the . . . secondary resale market of its own sequencing units." (Am. Compl. ¶ 31.) IET also argues that based on "Illumina's substantial position in the market for used Illumina sequencing units" and the "anticompetitive policies of its sales representatives . . . , a dangerous probability exists that its attempts to monopolize the secondary sequencing unit markets will succeed." (*Id.*) These "'naked assertions' devoid of 'further factual enhancement'" do not sufficiently establish an element of a claim to survive a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citing *Twombley*, 550 U.S. at 555–57, 127 S. Ct. at 1955); *see also GlobalTap LLC v. Smart Tap LLC*, No. 13 C 5322, 2015 WL 791256, at **5–6 (N.D. Ill. Feb. 24, 2015) (finding plaintiff's "conclusory statements" like "[t]here is a dangerous

probability that GlobalTap[] . . . will create market power in the relevant market" without "factual allegations to support these conclusions" insufficient to survive a motion to dismiss); *Mitsubishi Elec. Corp. v. IMS Tech., Inc.*, No. 96 C 499, 1997 WL 630187, at *6 (N.D. Ill. Sept. 30, 1997) ("Mitsubishi's conclusory allegation that Hurco is 'one of the largest producers' of CNC systems, and the mere recitation that defendants possess 'substantial market presence' are not enough to allege market power."). Without any specific factual allegations about Illumina's power in the relevant market, IET has failed to sufficiently allege dangerous probability, a requisite element of attempted monopoly under the Sherman Act.

Citing *Endsley v. City of Chi.*, 230 F.3d 276, 282 (7th Cir. 2000), IET argues market share, a factually intensive inquiry, is "best addressed on a motion for summary judgment or a trial" instead of a motion to dismiss. (Pl.'s Resp. to Mot. to Dismiss ("Resp.") (Dkt. No. 33) at 12.) However, dismissal of IET's antitrust claims is proper here because IET has failed to identify any non-conclusory facts about Illumina's dominance in the used sequencing unit market. *GlobalTap LLC*, 2015 WL 791256, at **5–6 (finding dismissal proper when plaintiff "does not provide any factual allegations to support [market power] conclusions" despite *Endsley*).

In light of IET's failure to adequately plead facts to support the requisite elements of attempted monopolization under the Sherman Act, we accordingly dismiss IET's antitrust claims (Counts I, II, and V) without prejudice for failure to state a claim under Rule 12(b)(6).

## II. ICFA and UDTPA Claims (Counts III & IV)

Illumina also moved to dismiss IET's claims under Illinois statutes: the ICFA and UDTPA. Because the same geographical issue determines the outcome of both ICFA and UDTPA claims, we analyze these claims together.

We must dismiss IET's ICFA and UDTPA claims because IET failed to plead the requisite nexus to Illinois. In 2005, the Illinois Supreme Court held that the ICFA does not "apply to fraudulent transactions which take place outside of Illinois" and does not have extraterritorial effect. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 185, 835 N.E.2d 801, 853 (Ill. 2005); *see also Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009) (noting *Avery* "severely limited the extraterritorial reach of the ICFA"). In recent years, this district has interpreted *Avery*'s geographic requirement to also apply to the UDTPA. *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 809 F. Supp. 2d 857, 859 (N.D. Ill. 2011) ("The Court concludes that the rule in *Avery* applies to the IUDTPA."); *see also Underground Sols., Inc. v. Palermo*, No. 13 C 8407, 2014 WL 4703925, at *10 (N.D. Ill. Sept. 22, 2014) (listing cases applying the reasoning in *Avery* to UDTPA claims).

To qualify as sufficiently "within Illinois" to bring a claim under the ICFA or UDTPA, a plaintiff must allege "circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery*, 216 Ill. 2d at 187, 835 N.E.2d at 853. "[T]here is no single formula or bright-line test for determining whether a transaction occurs within [Illinois]"; instead, "each case must be decided on its own facts." *Id*. Factors the Illinois Supreme Court has considered include "(1) the claimant's residence; (2) the defendant's place of business; (3) the location of the relevant item that is the subject of the disputed transaction; (4) the location of the claimant's contacts with the defendant; (5) where the contracts at issue were executed; (6) the contract's choice of law provisions, if there are any; (7) where the allegedly deceptive statements were made; (8) where payments for services were to be sent; and (9) where complaints about the goods or services were to be directed." *Haught v. Motorola Mobility, Inc*., No. 12 C 2515, 2012 WL 3643831, at *3 (N.D. Ill. Aug. 23, 2012).

We agree with Illumina that IET failed to allege Illumina's actions occurred primarily and substantially in Illinois. Based on IET's amended complaint, the only tangible connection to Illinois is that IET's state of corporation and principal place of business is in Illinois. (Am. Compl. ¶ 11.) IET claims its sales of occur within the United States, "including the State of Illinois," but the only specific sale IET alleges it lost because of Illumina impacted a customer in Florida. (*Id.* ¶¶ 2, 19.) Illumina is allegedly a dual citizen of Delaware and California with its principal place of business being San Diego, California. (*Id.* ¶ 11.) IET's ties to Illinois do not sufficiently establish the requisite connection to Illinois when the allegedly illegal actions of a California-based company impacted potential customers outside of Illinois. *Super Pawn Jewelry & Loan, LLC v. Am. Envtl. Energy, Inc.,* No. 11 C 8894, 2013 WL 1337303, at *7 (N.D. Ill. Mar. 29, 2013) (finding no substantial connection when only connection to Illinois is plaintiff being an Illinois business); *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008) (dismissing case when only contact with Illinois is plaintiffs' residence in Illinois); *Walker v. S.W.I.F.T. SCRL*, 491 F. Supp. 2d 781, 795 (N.D. Ill. 2007) (same, further relying on lack of defendant connections to or transactions in Illinois).

IET cites *AB SCIEX*, a similar case in which IET was also a plaintiff, to argue that its citizenship in Illinois sufficiently establishes a nexus to Illinois at the pleading stage. (Resp. at 18.) We find *AB SCIEX* inapposite because IET's *AB SCIEX* complaint pled connections beyond IET's incorporation and principal place of business in Illinois: IET also specifically identified three allegedly lost customers located in Illinois. *AB SCIEX, LLC*, 2013 WL 4599903, at *11 (summarizing that three out of nineteen named customers were in Illinois). In this case, IET does not name any lost customers in Illinois; the only lost customer is in Florida. Accordingly, we dismiss IET's ICFA and UDTPA claims because IET has not pled a

sufficient nexus to Illinois. To the extent Illumina's challenged behavior is "centered outside Illinois," IET "must rely on some other state's law" if it raises these claims in a second amended complaint. *LG Elecs. U.S.A., Inc.*, 809 F. Supp. 2d at 861 (internal citation omitted).

## III. Intentional Interference with a Prospective Economic Advantage (Count VI)

We now turn to IET's claim for intentional interference with a prospective economic advantage. As a federal court sitting in diversity over this common law claim, state substantive law controls our analysis. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Neither party raised any choice of law issues regarding the intentional interference claim, so we apply the law of Illinois, the forum state. *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009) ("Because none of the parties raised the choice of law issue, we apply the substantive law of Illinois, the forum state.")

To state a claim for intentional interference with prospective economic advantage under Illinois law, a plaintiff must allege "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Foster v. Principal Life Ins. Co.*, 806 F.3d 967, 971 (7th Cir. 2015) (citing *Voyles v. Sandia Mortg. Co.*, 196 Ill. 2d 288, 300–01, 751 N.E.2d 1126, 1133 (Ill. 2001)). "Actions that form the basis of a tortious interference claim must be directed at third-party business prospects." *F:A J Kikson v. Underwriters Labs., Inc.*, 492 F.3d 794, 800 (7th Cir. 2007).

Since we must accept all of IET's well-pleaded allegations as true when considering a motion to dismiss, we find that IET has plausibly pled the elements of an intentional interference at this stage. Illumina does not contest that IET adequately pled a reasonable expectancy of a

11

business relationship, Illumina's knowledge of IET's expectancy, or damage to IET.
(Mem. at 19.) Illumina argues, however, that IET has failed to plead that any interference with IET's prospective business relationships was unjustified. (*Id.*) While IET claims Illumina falsely told its customers it could charge a site relicensing fee, Illumina argues it had the right to impose site licensing fees under its sales contracts and did not otherwise engage in "predatory or anticompetitive conduct under the antitrust laws." (*Id.*, Resp. at 20.) For the purposes of a motion to dismiss, we construe the pleadings in the light most favorable to the plaintiff. *Santiago*, 599 F.3d at 756. As false statements to potential customers "do[] not constitute privileged lawful competition," we find IET has plausibly pled unjustified interference. *AB Sciex*, 2013 WL 4599903, at *11; s*ee also Medscript Pharmacy, LLC v. My Script, LLC*, 77 F. Supp. 3d 788, 796 (N.D. Ill. 2015) ("[A] plaintiff's claim for tortious interference survives when his complaint alleges that defendants made false statements that caused plaintiff to lose potential customers.").

Illumina also argues we should dismiss this claim because IET did not plead the purportedly false statements with Rule 9(b) particularity. (Resp. at 19.) Indeed, Rule 9(b) heightened pleading requirements apply to intentional interference claims when the claim alleges the defendant engaged in "fraudulent conduct," including making false statements to potential customers. *Medscript*, 77 F. Supp. 3d at 793; *see also PharMerica Chi., Inc. v. Meisels*, 772 F. Supp. 2d 938, 955 (N.D. Ill. 2011). While IET argues Rule 9(b) does not apply to this claim because "it does not sound in fraud" (Reply at 20, n.9), we agree with Illumina that Rule 9(b) applies because IET alleges Illumina misled potential IET customers by

12

misrepresenting its ability to charge site licensing fees.[3] *See Medscript*, 77 F. Supp. 3d at 793, 797 (finding plaintiff's claims required Rule 9(b) particularity because defendant allegedly made false statements to plaintiff's patients and prescribers).

Nonetheless, IET sufficiently pled the elements of intentional interference under the heightened Rule 9(b) pleading standard. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Under Rule 9(b), the complaint must contain "'the who, what, when, where, and how' of the fraudulent conduct," but need not contain "extreme specificity." *Medscript*, 77 F. Supp. 3d at 793 (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). In its amended complaint, IET claims Illumina contacted potential IET customers beginning in or around 2007 and informed these third parties that unless they purchased a used sequencing unit directly from Illumina, Illumina would demand a site licensing fee to operate the units' operating software. (Am. Compl. ¶ 5.) IET cites exact figures Illumina stated it would charge for specific Illumina sequencing unit models, and identifies with particularity the potential sale of a specific unit model to the University of Central Florida that allegedly fell through because of Illumina's fraudulent communications. (*Id.* ¶¶ 5, 19.) Considering these allegations, we find IET has pled with adequate particularity how and when Illumina allegedly interfered with IET's prospective sales or leases to provide notice to Illumina of the claims against it. *Vicom, Inc. v. Harbridge Merch. Servs, Inc.*, 20 F.3d 771, 777–78 (7th Cir. 1994) (noting "fair notice" to defendants is "'[p]erhaps the most basic consideration' underlying Rule 9(b)") (citing 5A Wright &Miller, Fed. Prac. & Proc. Civ. § 1297 (3d ed.)); *see Swervo Entm't Grp., LLC v. Mensch*,

---

[3] The parties attempt to litigate whether Illumina licensed or sold operating software in sales of new Illumina sequencing units. (*See* Mem. at 3–6; Resp. at 13–17.) As discussed below, because it is not proper to consider the merits of the underlying claim on a motion to dismiss, we do not rule on this fact-intensive dispute at this time. *See Gibson*, 910 F.2d at 1520.

No. 16 C 4692, 2017 WL 1355880, at *4 (N.D. Ill. Apr. 13, 2017) (slip op.) (finding Rule 9(b) did not require pleading of defendant's exact location when she made alleged misrepresentations, and did not necessitate identifying specific individuals within an entity who engaged in communications); *Medscript*, 77 F. Supp. 3d at 793, 796 (finding identification of plaintiff's customers as a group, without individually naming them, sufficient under Rule 9(b)). Accordingly, we find IET has sufficiently alleged its intentional interference claim and deny Illumina's motion to dismiss Count VI.

**IV.    Declaratory Judgment under 29 U.S.C. § 2201(a) (Count VII)**

Finally, we consider IET's motion for a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). IET requests a declaration as to whether Illumina "may charge or threaten to charge a 'site licensing fee' to customers purchasing Illumina sequencing units from IET." (Am. Compl. ¶¶ 52–59.) Because of constitutional limits on the jurisdiction of federal courts, the Declaratory Judgment Act "allows federal courts, in their discretion, to render declaratory judgments only where there exists an 'actual controversy.'" *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995) (citing *Crown Drug Co., Inc. v. Revlon, Inc.*, 703 F.2d 240, 243 (7th Cir. 1983)). Accordingly, to survive a motion to dismiss, a complaint seeking declaratory relief "must allege facts sufficient to establish such an actual controversy." *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). Even if a court considers the declaratory action otherwise justiciable, it is within our discretion to decline to consider a declaratory judgment action. *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987) ("It is well settled that the federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction.").

14

Illumina argues we should dismiss the declaratory judgment claim because Illumina licenses instead of sells its operating software on new Illumina sequencing units, and thus had the legal right to charge site licensing fees to purchasers of its resold machines. (Mem. at 20.) Illumina argues the Software License Agreement attached to its motion to dismiss as Exhibit A makes incontrovertible that Illumina licensed the operating software on its sequencing units, that the first sale doctrine does not apply, and that Illumina accordingly could charge site licensing fees to customers purchasing Illumina sequencing units from IET. (*Id.* at 4–6.) We may consider documents attached to a motion to dismiss as "part of the pleadings" under Federal Rule of Civil Procedure 10(c) "if they are referred to in the plaintiff's complaint and are central to [its] claim." *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (internal citation omitted). IET argues we should not consider the Software License Agreement filed by Illumina because Illumina has not established that this is the software contract referred to in its amended complaint. (Resp. at 16 n.16 (arguing that Illumina has not established that the attached Agreement "governs all of its sales, or even the transactions identified in IET's Amended Complaint," and should not be considered at this stage as part of the pleadings because IET did not refer to this contract in its amended complaint).)

Without ruling on whether the submitted Agreement governed the transactions at issue, we have concerns about the applicability of this contract to all of the transactions at issue in the amended complaint: while the amended complaint involves IET's sales of equipment starting in 2007, the Agreement itself was not copyrighted until 2013. (Mem. Ex. A at 2.) Even assuming arguendo the Agreement governed all Illumina sequencing units IET attempted to sell during the relevant period, we nevertheless find that the Agreement does not conclusively establish that Illumina licensed its software equipment. *See Vernor v. Autodesk, Inc.*,

621 F.3d 1102, 1109 (9th Cir. 2010) (requiring consideration of a number of factors in a software transfer to determine whether a license or sale occurred, beyond "whether the agreement was labeled a license"). Furthermore, a factually-intense analysis of the terms of the transfer of Illumina's software at the original sale of its unit sequencing machines is not properly addressed on a motion to dismiss. *See, e.g.*, *Burroughs Payment Sys., Inc. v. Symco Grp., Inc.*, No. C 11 06268 JCS, 2012 WL 1670163, at *9 (N.D. Cal. May 14, 2012) (denying motion to dismiss based on whether a transfer of software granted license or ownership, stating the analysis is "more appropriately addressed at a later stage of the case, after the factual record has been developed"). Taking IET's allegations as true, we find IET sufficiently alleged an actual controversy to survive a motion to dismiss its intentional interference claim. *F. McConnell & Sons, Inc. v. Target Data Sys., Inc.*, 84 F. Supp. 2d 961, 974 (N.D. Ind. 1999) ("The purpose of the motion to dismiss is to test the legal sufficiency of the complaint and not to decide the merits.").

Illumina also argues IET's declaratory judgment claim is needlessly redundant and thus should be dismissed. (Mem. at 20.) IET does not address Illumina's redundancy argument in its response. While district courts regularly decline jurisdiction over a declaratory judgment action when it "substantially overlaps with Plaintiff's substantive claims," we disagree that the legal issue on which IET seeks a judgment is redundant. *Cohn v. Guaranteed Rate Inc.*, 130 F. Supp. 3d 1198, 1205 (N.D. Ill. 2015) (citing *Vill. of Sugar Grove v. F.D.I.C.*, No. 10 C 3562, 2011 WL 3876935, at *9 (N.D. Ill. Sept. 1, 2011) (listing cases)); *c.f. Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002) ("All of the issues in the declaratory judgment claim will be resolved by the substantive action, so the declaratory judgment serves no useful purpose."). The only other claim that stands in light of this Order is

the intentional interference claim; we have dismissed Counts I through V.  Taking all inferences in favor of IET, the declaratory judgment claim may proceed because it is sufficiently different from IET's intentional interference claim.  *C.f. Cohn*, 130 F. Supp. 3d at 1205 (finding claim for a declaratory judgment that plaintiff was discharged without cause redundant to a breach of contract claim because the legal issue is the same in both counts).  Accordingly, we deny Illumina's motion to dismiss Count VII.

## CONCLUSION

For the aforementioned reasons, we grant Illumina's motion to dismiss in part and deny in part.  We hereby dismiss without prejudice Counts I through V and deny Illumina's motion to dismiss Counts VI and VII.[4]  IET is granted leave to file a second amended complaint on or before March 16, 2018.

In light of our ruling, we deny Illumina's motion to postpone briefing on IET's motion to strike as moot.  Illumina may file a response to IET's motion to strike Illumina's affirmative defenses on or before March 16, 2018, and IET may file a reply brief on or before March 30, 2018.  It is so ordered.

                                                                                          _____
                                                                                          Honorable Marvin E. Aspen
                                                                                          United States District Judge

Dated: February 28, 2018
           Chicago, Illinois

---

[4] Whether or not IET can adequately re-plead a federal antitrust claim, we retain jurisdiction over this case based on diversity jurisdiction pursuant to 28 U.S.C. § 1332, as IET sufficiently pled diversity of citizenship and the amount in controversy in its amended complaint. (Am. Compl. ¶ 11).

17