IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL EQUIPMENT TRADING, LTD., an Illinois corporation, | ) ) ) | No. 1:17-cv-05010 |
| Plaintiff, | ) ) | Honorable Marvin E. Aspen |
| v. | ) ) ) | Magistrate Judge M. David Weisman |
| ILLUMINA, INC. | ) ) | |
| Defendant. | ) ) | |

**JOINT MEMORANDUM OF LAW IN SUPPORT OF
JOINT MOTION TO ENTER CONFIDENTIALITY ORDER**

## I. JOINT STATEMENT

Illumina and IET agree on the need for the Court to enter a Confidentiality Order protecting proprietary, commercially, and competitively sensitive material in this case. The case will involve the exchange of financial and customer information that must be limited in distribution to protect the interests of both parties. The parties further agree that any Confidentiality Order should have two tiers of protection: (1) a Confidential designation that, with certain exceptions, prohibits disclosure to third parties but authorizes disclosure to employees of the parties, and (2) a Highly Confidential designation that further limits disclosure, permitting access principally to counsel.

Within this general framework, however, the parties have reached an impasse on three disputes regarding the disclosure of and challenges to material designated Highly Confidential that require judicial resolution. Those disputes are:

1. Whether Highly Confidential material may be disclosed to a receiving party's employees or officers if they are (or may be) used as experts or consultants by the receiving party.

2. Whether a receiving party must identify its experts or consultants to the producing party and provide an opportunity for the producing party to object prior to disclosing Highly Confidential material to said experts or consultants.

3. Whether, in the event of a dispute as to Highly Confidential designations, it is the receiving party or the producing party that must first file a motion with the Court to resolve any remaining disputes.

Illumina and IET ask the court to resolve these disputes and enter a Confidentiality Order reflecting that resolution. IET's proposed Confidentiality Order, redlined to reflect the areas of disagreement, is attached hereto as Exhibit "A" and Illumina's proposed Confidentiality Order is attached hereto as Exhibit "B."[1] The parties' positions on these issues are as follows:

---

[1] Pursuant to Judge Aspen's standing order, copies of each of these proposed orders in Word format have been emailed to Judge Aspen's proposed order email address contemporaneous with the filing of this joint motion.

## II. IET'S STATEMENT

Illumina has made clear from the beginning – including to the Court during the June 9, 2019 initial status conference – that it was conditioning its document production on the entry of a protective order. The parties have been conferring regarding the scope of a Confidentiality Order since July 1, 2019.[2] IET's position at the outset was simply that the Northern District of Illinois LR 26.2 Model Confidentiality Order be submitted to the Court for entry; Illumina, on the other hand, insisted that the protective order contain two tiers of protection, *i.e.* a "Confidential" designation and a "Highly Confidential – Counsels' Eyes Only" designation. In the spirit of compromise, IET agreed to the concept of a second tier; however, that concession has only served to spawn additional and prolonged disagreement between the parties, hindering any meaningful exchange of documents. At base, IET wants to ensure that Illumina does not abuse the "Highly Confidential" designation and that it uses it sparingly and only when absolutely necessary based on an actual, demonstrable threat of competitive injury, consistent with Illinois law. IET's counsel also deems it essential to rely on its one or two client representatives in preparing its case and defending Illumina's claims, and cannot be effectively handcuffed in their ability to do so where Illumina has the unfettered ability under the terms of its proposed Confidentiality Order to wholesale designation of the bulk of its thousands of documents as "Highly Confidential," effectively preventing IET's representatives from participating in its own case. Illumina then insists on placing the burden on IET to raise any challenges with the court.

### A. Dispute #1: Disclosure of Highly Confidential Material to Client Representatives Designated As Experts or Consultants.

---

[2] Illumina indicated in an email dated May 31, 2019 that it wished to circulate the initial draft confidentiality agreement, which IET received one month later on June 28, 2019.

Central to this dispute is IET's concern that it will be handicapped in its prosecution of this case, which involves complex claims of antitrust, tortious interference with business expectancy, and consumer fraud within a niche medical device industry. As such, IET anticipates that it will designate at least one of its own key principals and officers as a witness to testify, *among other things*, about his knowledge of this specialized industry, including the composition of the market and the effects of the unfair competition that after-market sellers of genome sequencers face when Illumina refuses to license, service or sell necessary parts to its customers. Such testimony would likely be offered pursuant to Federal Rule of Evidence 702 due to IET's representative's specialized knowledge which would assist the trier of fact to both understand the evidence and determine a fact in issue. Once document production commences, counsel for IET will be receiving tens of thousands of documents[3] that will require review and interpretation by one or more of IET's client representatives. Under Illumina's proposed version of the Confidentiality Order, however, counsel for IET cannot show what it reasonably anticipates will be thousands of documents -- a substantial portion of the discovery material Illumina produces in this case -- to its own client.

Because there is a "presumption of public access to discovery materials," the court is required to make a good-cause determination before entering a protective order shielding relevant information from public disclosure. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 946 (7th Cir. 1999); Fed. R. Civ. P. 26(c)(1). As the Seventh Circuit has recognized, "[m]any a litigant would prefer that the subject of the case—how much it agreed to pay for the construction of a pipeline, how many tons of coal its plant uses per day, and so on—be kept from the curious (including its business rivals and customers), but the tradition that litigation is open to

---

[3] Counsel for Illumina has stated that "Illumina will be producing thousands of pages of documents, likely on a rolling basis" (8/18/19 email from A. Stork to H. Teplinsky); that "Illumina expects to produce thousands of documents spanning more than a decade" (9/24/19 email from B. Gould to H. Teplinsky).

the public is of very long standing." *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000).

Although two-tiered protective orders contemplating that some documents will be produced with a heightened "attorneys' eyes only" designation are not uncommon, courts in this jurisdiction have cautioned that such a designation should "only be used on a relatively small and select number of documents where a genuine threat of competitive or other injury dictates such extreme measures." *Team Play, Inc. v. Boyer*, No. 03 C 7240, 2005 WL 256476, at *1 (N.D. Ill. Jan. 31, 2005). To be sure, IET is not seeking to restrict Illumina's ability to designate documents as "Highly Confidential" *per se*; rather, the parties' disagreement involves the effect of the higher level of protection on IET's counsel's ability to use their client as a resource while prosecuting this case and defending Illumina's claims. Under Illumina's version of the Confidentiality Order, the client would be absolutely prevented from assisting in case preparation, attending depositions where "Highly Confidential" documents are used as exhibits, giving expert testimony to the extent such opinions would be based on any such "Highly Confidential" documents, and from even seeing, interpreting or commenting on these documents.

The prevention of a party's attorneys from sharing the documents with their own clients has been characterized by courts in this jurisdiction as an "extreme measure." *See Id*. This is the case regardless of whether a party designates or plans to designate a client representative as an expert witness or consultant. As this Court in *Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F.Supp.3d 1079 (N.D. Ill. 2015), put it, "[t]he AEO designation must be used selectively because discovery and trial preparation are made significantly more difficult and expensive when an attorney cannot make a complete disclosure of relevant facts to a client and because it leaves the litigant in a difficult position to assess whether the arguments put forward on its behalf are

4

meritorious." *Id.* at 1084, citing *Motorola, Inc. v. Lemko Corp.*, 08 CV 5427, 2010 WL 2179170, at *5 (N.D. Ill. June 1, 2010). "Great care must be taken to prevent the unnecessary curtailment of a party's trial preparation." *Dazheng*, 133 F.Supp.3d at 1088 (citation omitted) (Weighing risks of disclosure to client representatives against the receiving party's "need to view the information in order to litigate its claims," court found that heightened AEO designation was inappropriate where plaintiff's claims "turn in part on whether it can prove that the defendants misappropriated its customer and pricing information in an attempt to lure away its business" and where information was relevant in determining the scope of those claims).

Further, as this Court in *Motorola* stated:

> [C]ourts cannot ignore the fact that ninety-eight percent of cases are not tried, but are resolved in mediation and other settlement methods. It is difficult, and perhaps impossible, for an attorney to counsel a client to compromise or even abandon a case on the basis of information kept secret from the client. A litigant who is not in possession of all relevant facts, furthermore, is in a poor position to assess its obligation to evaluate its ongoing obligation to maintain only arguably meritorious actions at every stage of the case. Although the imposition of these and other handicaps upon a litigant is justifiable in some circumstances, such action by the court must be supported by a showing that disclosure will work a clearly defined and serious injury to the party seeking extraordinary confidential treatment. 2010 WL 2179170, at *6 (citation omitted).

Illumina's stated justification for refusing to allow IET's representatives – *even if designated as expert witnesses* – to be shown "Highly Confidential" documents is IET's allegation that and Illumina are competitors.[4] (SAC, ¶ 4, Dkt. No. 54). But to justify an "attorneys' eyes only" designation, the designating party must do more than show that it is a competitor of the receiving party or that the documents in question disclose information about the designating

---

[4] Claiming it was a "legal conclusion" Illumina refused to admit or deny that allegation in its Answer. (Ans. ¶ 4; Dkt. No. 88) and maintains that IET's alleged product markets do not constitute viable antitrust markets in any event. If the markets don't exist as Illumina claims, then IET and Illumina either are not competitors at all, or are "competitors" in a non-existent market. Either way, Illumina's prior litigation positions contradict any claim that it now makes that disclosure to a limited number of IET's client representatives carries an inherent risk of disclosure by IET of "sensitive competitive information."

5

party's relationships with other competitors. *See, e.g., Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 442-43 (N.D. Ill. 2006); *Dazheng*, 133 F. Supp. 3d at 1084, citing *Motorola,* 2010 WL 2179170, at *4. "Instead, the designating party needs to show that the disclosure of the particular AEO designated materials to even a small number of the other party's personnel would risk the disclosure of sensitive competitive information." *Dazheng*, 133 F. Supp. 3d at 1084, citing *Motorola*, 2010 WL 2179170, at *4.

Under these standards, IET asks that this dispute be resolved either by: a) including one non-lawyer representative of each corporate party as a person to whom "Highly Confidential" information may be disclosed, subject to the individual agreeing to limit his or her use of the information or b) allowing disclosure to any party representatives who are reasonably expected to offer expert testimony. IET submits that in either case, Illumina will be amply protected under IET's version of the Confidentiality Order by the restrictions and conditions attendant to any confidentiality designation. *See Team Play*, 2005 WL 256476, at *2. To be clear, IET is a small company with under 10 employees, and it realistically will designate one representative – its founder and President – as an expert witness. Thus, Illumina's apparent concern that IET will haphazardly disseminate its highly sensitive information to "all" of its employees is unfounded.

**B.     Dispute #2: Identification of Experts or Consultants Prior to Disclosure of Highly Confidential Material.**

Illumina's version of the Confidentiality Order requires IET to wait to provide potential expert witnesses or consultants any "Highly Confidential" material until it first discloses his or her identity to Illumina and allow it to preemptively seek to bar the disclosure—which is inherently inconsistent with the longstanding "default" rule that a party need not disclose the identity of its consultants unless and until it is decided that they will testify at trial. *See* Fed. R. Civ. P. 26(b)(4)(D) (Facts known or opinions held by non-testifying experts not discoverable except under

6

showing of exceptional circumstances). This rule was designed to protect confidential and sensitive information regarding litigation strategy and to prohibit disclosure of the situation where a potential expert does not agree with a party's counsel's theory of the case.

Further, requiring IET to give Illumina notice and an opportunity to object to IET's disclosure of "Highly Confidential" material even to testifying experts will almost certainly result in increased litigation over what documents IET may show its experts, in each case requiring a complex balancing test by the courts. *See, e.g., Saso Golf, Inc. v. Nike, Inc.*, No. 08 C 1110, 2009 WL 3242112, at *2 (N.D. Ill. Oct. 5, 2009). By having the unfettered ability to restrict which documents IET's experts and consultants may see, Illumina can effectively make it so IET's experts cannot render any opinions at all.

IET submits that a provision allowing disclosure of Highly Confidential information to a party's experts and consultants in the Confidentiality Order conditioned on any such individual's execution of the "Attachment A" Acknowledgement appended to the Confidentiality Order *prior to* sending them any Highly Confidential material will adequately protect the parties.

### C. Dispute #3: Burden of Persuasion as to Confidentiality Designations.

IET has a realistic concern based upon Illumina's own admission that it will likely produce hundreds of thousands of documents that Illumina will cloak the bulk of material it produces in the "Highly Confidential" designation. As a result, IET's version of the Confidentiality Order places the burden on the *designating* party to file a motion to retain the "Highly Confidential" designation in the event of a dispute. IET's version of the Confidentiality Order is in harmony

with Illinois law, which places the burden of persuasion on the producing party to demonstrate that its confidentiality designation is appropriate.[5]

"When a designation of materials as confidential under a protective order is challenged, the <u>designating</u> party bears the burden of justifying the need for enforcement of the order." *Motorola,* 2010 WL 2179170, at *4 (N.D. Ill. June 1, 2010) (emphasis supplied), citing *Team Play,* 2005 WL 256476, at *1; *In re: Bank One Securities Litig.,* 222 F.R.D. 582, 586 (N.D.Ill.2004). *See also Dazheng*, 133 F. Supp. 3d at 1085 ("[a]s the party seeking to prevent GMT from reviewing the documents, it is Tru Group's burden, not GMT's, to establish good cause" for maintaining the AEO designation on the challenged documents); *In re: Aqua Dots Prods. Liab. Litig.*, 08 CV 2364, 2009 WL 1766776, at *1, *4 (N.D. Ill. June 23, 2009) (burden on designating party to show that disclosure will result in "clearly defined and serious injury").[6]

IET further submits that having the party arguing for the enhanced protection assume the burden of filing the motion and convincing the court why the documents deserve such protection will force the parties to be selective in their designations and eliminate any potential for abuse of the "Highly Confidential" category. *See Team Play,* 2005 WL 256476, at *1 ("Where a party's use of the Attorneys' Eyes Only designation is sweeping it can be a form of discovery abuse …"). As demonstrated in IET's version of the Confidentiality Order, the only time the producing party

---

[5] It is worth noting that the pending disputes concern only the "Highly Confidential" tier. IET does not anticipate taking issue with Illumina's designation of documents under the less restrictive "Confidential" tier, since the parties agree that such material may be shown to party representatives and may be provided to potential experts without first having to disclose them to the other side.

[6] IET's position is not contrary to *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 306 (N.D. Ill.), *order clarified*, 153 F.R.D. 614 (N.D. Ill 1993), relied upon by Illumina, where the court stated that "the burden of raising the issue" of a challenged designation with the court falls on "the party challenging such designation" because in that case, from what IET can tell from the opinion, the court was reciting the parties' agreed-upon remedy for challenging designations, rather than resolving a disputed issue submitted to the court.

would have that burden is when, after a meet and confer process, the parties cannot agree on the designation.[7] The designating party should bear the burden of filing the motion.

## III. ILLUMINA'S STATEMENT

"Confidentiality orders" that "allow[] documents to be designated 'Confidential' and 'Highly Confidential' … routinely are entered in [antitrust] cases like this to protect sensitive and confidential material." *In re Broiler Chicken Antitrust Litig.*, 2019 WL 2764260, at *3 (N.D. Ill. 2019). Indeed, "provisions [that] preclude or restrict disclosure by the attorneys to their clients" are "[e]specially" appropriate "if the parties are competitors," Manual for Complex Litig. § 30.2, as IET alleges in the operative complaint, 2d Am. Compl. ¶ 4.

IET's arguments all rest on the speculative notion that Illumina might "abuse the 'Highly Confidential' designation." *Supra* at 2. Neither party has yet designated a single document as Highly Confidential, and the proposed Orders both strictly limit the use of Highly Confidential designations.[8] Thus, IET's concerns are premature, baseless, and should be rejected.

### A. A Party's Employees and Officers Should Not Receive Highly Confidential Material Absent Advance Notice and Consent.

Illumina makes and sells genome sequencing instruments and related consumables. IET sells used medical equipment, including Illumina sequencers. Despite alleging that Illumina "is a competitor of IET,"[9] *id.*, IET seeks to disclose Illumina's "most sensitive" "trade secret[s,]

---

[7] Generally, IET proposes the following procedure with regard to "Highly Confidential" material in its version of the Confidentiality Order: Step 1, the designating party identifies to the receiving party the documents it wishes to be treated as "Highly Confidential"; Step 2, the receiving party tells the designating party whether it agrees or disagrees with the designations; Step 3, if there is a disagreement, the parties must meet and confer; and Step 4, if after the meet and confer there remains a disagreement as to the "Highly Confidential" designation, the designating party files a motion with the court and bears the burden of persuasion that the "Highly Confidential" designation is appropriate. (*See* Ex. A, ¶ 9(a)–(d)).

[8] *See*, *e.g.*, Ex. B ¶ 2(b) (limiting what may be designated as Highly Confidential and requiring all designations be made in "good faith"); *id.* ¶ 9 (allowing a receiving party to challenge Highly Confidential designations).

[9] Illumina does not admit IET's allegation given that Illumina generally sells new equipment and IET generally sells used equipment. However, the harms from unauthorized disclosure of Illumina's Highly Confidential information

9

confidential research, development, proprietary, financial [and] commercial information" to its *own employees and officers* whom IET "may" want to use as experts or consultants in this matter. Ex. A ¶¶ 2(b), 5(b)(6). Moreover, IET seeks to do so without first notifying Illumina or giving it the opportunity to object to disclosures of Highly Confidential material to IET employees. *Id.* ¶ 5(d).

Combined, IET's proposals for these two provisions eviscerate any protection of Illumina's "most sensitive" materials from disclosure to an alleged competitor. Solely by the unilateral, undisclosed determination that it "may" want to hire its own executives as experts, IET can grant them access to Illumina's most sensitive financial and customer information. This would circumvent the entire purpose of the Highly Confidential designation, which is to prevent sensitive information from falling into the hands of the opposing parties' employees. For example, IET has requested detailed pricing information from Illumina. IET's executives could use this confidential pricing information to raise prices for used instruments to customers. Likewise, IET has requested Illumina produce communications with its customers. IET could use this discovery to learn the identities of Illumina's current customers and subsequently approach and attempt to poach these customers. The fact that IET has sued Illumina and can conduct discovery related to its claims does not mean that IET's employees should obtain access to Illumina's most commercially and competitively sensitive information.

What IET seeks goes far beyond what is normal in a case like this. *First*, by insisting that it should be allowed to designate its employees as alleged experts or consultants, without giving

---

do not depend on whether IET is its direct competitor. Among the documents IET has requested are Illumina's price lists, customer communications, and internal policies and procedures. Each could be used to IET's benefit and/or Illumina's detriment, e.g., by allowing IET to adjust its pricing based on confidential Illumina financial information, if not adequately protected by a Confidentiality Order.

notice to Illumina and allowing Illumina to object, IET wants to bypass the accepted rule prohibiting disclosures of Highly Confidential material to party employees. Ex. A ¶ 5(b)(6); *see also*, *e.g.*, *Broiler Chicken*, 2019 WL 2764260, at *3 (limitations on disclosures to party employees are "routine[]" in antitrust cases); Manual for Complex Litigation § 30.2 (same).

*Second*, IET proposes that this loophole apply not only to employees and officers who "have been retained" as "[c]onsultants, investigators, or experts" but also to those who "may be" employed in that capacity, as well as those who might be "*reasonably expected* to offer [expert] testimony." *Id.* IET similarly "includ[es] their staff" as permitted recipients of Highly Confidential material. *Id.* As IET wishes to use its "key principals and officers" as experts or consultants, "including their staff" could conceivably encompass the entire company. *Id.*

*Third*, IET strips away *any* protection Illumina might have from this exception. As is common, Illumina proposes requiring parties to identify their experts prior to disclosing Highly Confidential material to them. Ex. B ¶ 5(d); *see also Saso*, 2009 WL 3242112, at *1 (cited by IET *supra* at 7) (containing such a provision). IET rejects this provision, eliminating Illumina's opportunity to know about or object to IET's disclosures to purported in-house experts. Ex. A ¶ 5(d). Thus, under IET's preferred Order, it could unilaterally determine that *any* of its employees or officers "may be" retained as experts or consultants or might be "reasonably expected" to provide expert testimony. It could then disclose Illumina's "most sensitive" materials to such employees, all without providing Illumina notice or an opportunity to object to these disclosures. IET objects that Illumina's Order may "result in increased litigation" over disclosures to experts, but its position effectively seeks an "unfettered" right to disclose Highly Confidential material without *any* possibility of "balancing" of the harms to Illumina. *See supra* at 7; *Saso*, 2009 WL 3242112, at *3-4 (harms from expert disclosure outweighed the need for it).

11

Courts have rejected far less drastic schemes under identical circumstances. For example, in *Tailored Lighting v. Osram Sylvania*, a plaintiff sought disclosure of Highly Confidential material "to a single 'business or technical person from each party,'" to allow "its president" to "assist[] counsel on technical issues" that otherwise would require it to "retain an outside consultant." 236 F.R.D. 146, 147 (W.D.N.Y. 2006). Although the "Court ha[d] no reason to question the integrity of plaintiff's president," it concluded "the substantial risk of competitive injury" from "even the subconscious use of confidential information" made plaintiff's proposal "unreasonable" and "warranted the entry of [a] protective order" barring such disclosures to the plaintiff's president. *Id.* at 148-49. Other cases have reached the same conclusion in circumstances virtually identical to this case. *Amsted Indus. Inc. v. Nat'l Castings, Inc.*, 1988 WL 90022, at *1 (N.D. Ill. 1988) (denying protective order allowing disclosures to three of plaintiff's in-house employees for technical, accounting, and financial advice); *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988) (denying protective order allowing plaintiff's president to receive confidential materials).[10]

Illumina's proposal protects its legitimate business interests while still permitting IET to prosecute this litigation. Illumina does not categorically object to IET using its employees and officers as consultants or experts in this litigation. (Illumina does not herein concede the qualifications of IET's experts or the admissibility of their testimony.) As in any case, IET is free to use "at least one of its own key principals … to testify … about his knowledge of this

---

[10] The cases IET cites are inapposite. None involve the use of a party employee as an expert witness or consultant. *See*, *e.g.*, *Motorola*, 2010 WL 2179170, at *5 (discussing access to protected material for "mediation and … settlement," not expert testimony) (quoted *supra* at 5). And each involves challenges to confidentiality designations on particular documents, not the entry of an umbrella protective order allowing Highly Confidential designations. *See*, *e.g.*, *Dazheng*, 133 F. Supp. 3d at 1084 (distinguishing the legal standards between these contexts) (cited *supra* at 4-6). As a result, IET's cases shed little light on the dispute at hand.

12

specialized industry." *Supra* at 3. But IET has not shown its employees require Illumina's Highly Confidential materials to testify about facts already within their industry "knowledge."[11]

Rather, all Illumina asks is that (1) parties not disclose their opponents' "most sensitive" materials, i.e., those marked Highly Confidential, to their own employees simply because they are or "may" be used as experts or consultants, and that (2) parties provide notice (and an opportunity to object) to any disclosures of Highly Confidential material to identified experts or consultants. This is entirely consistent with law and practice and should be ordered.

**B.      The Challenging Party Should Bring Any Unresolved Disputes to the Court.**

Under both proposed Orders, the parties may only designate documents Highly Confidential in good faith. Ex. A ¶ 2(b); Ex. B ¶ 2(b). If the parties disagree, they must meet and confer on specific objections to disputed Highly Confidential designations. For unresolved disputes, Illumina's proposed order allows the challenging party to seek judicial intervention. Illumina's hope is that few if any disputes would need to be resolved by the Court. But the disputes that may require resolution under Illumina's proposed Order would only be those of greatest import to challenging party, conserving the parties' and the Court's resources.

By contrast, IET demands that all Highly Confidential designations be stricken unless the producing party "seek[s] judicial intervention by filing a motion seeking that the court permit the designation" within "5 business days" after the parties fail to resolve a dispute. Ex. A ¶ 9(c). Motion practice under IET's proposal is likely to be far less restrained. Relieved of any obligation to file a motion, IET could wholesale challenge *every single* Highly Confidential

---

[11] IET also suggests that parties effectively "would be prevented from attending depositions" under Illumina's proposed Order. *Supra* at 4. Not true. Under both Orders, "a party … shall not be excluded from a deposition solely because the deposition testimony is presumed Highly Confidential" and "may only be excluded … if the other party specifically designates the anticipated deposition testimony as Highly Confidential on the record at the time the testimony is taken" and even then only for a limited duration. Ex. A ¶ 4(b); Ex. B ¶ 4(b).

13

designation and force Illumina to hastily file a motion or waive its designations. This is inefficient and burdens the parties and the Court.

IET's challenge proposal is unsupported by law. Illumina does not dispute that in an eventual judicial challenge, "[t]he burden of persuasion … shall be on the designating party." *Compare supra* at 8 *with* Ex. B ¶ 9(b). But consistent with the Model Confidentiality Order for the Northern District of Illinois, Illumina would have the challenging party (not the designating party) "file and serve a motion that identifies the challenged material and sets forth in detail the basis for the challenge." *Compare* Ex. B ¶ 9(b) *with* Form LR26.2 ¶ 9(b) (containing the exact same language). Indeed, almost all the cases IET cites followed the same procedure,[12] and IET offers no authority supporting its alternative proposal.

Although the designating party ultimately bears the burden of persuasion, allocating the "burden … to present the issue to the court" to "the party challenging those designations" is "consistent with the proper allocation of evidentiary burdens," and with common sense, routine practice, and the law. *See*, *e.g.*, *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1122 (3d Cir. 1986); *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987); *Alexander Hous. LLC v. Int'l Bhd. of Elec. Workers*, 2004 WL 1718654, at *3–4 (N.D. Ill. 2004); *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 306 (N.D. Ill. 1993) ("The burden of proving confidentiality remains on the party claiming confidential treatment while the burden of raising the issue shifts to the party challenging such designation.").

For example, "requiring the party challenging the confidentiality designation to move the court to resolve the dispute, … provides the court with an opening brief that lays out specific

---

[12] *See Aqua Dots*, 2009 WL 1766776, at *1; *Team Play*, 2005 WL 256476, at *1; *Bank One*, 222 F.R.D. at 584; *Dazheng*, 133 F. Supp. 3d at 1082 (all cited by IET) (challenger files motion).

14

objections to the contested confidentiality designation." *Johnson v. Kemps*, 2011 WL 2550507, at *5 (N.D. Ill. 2011). In contrast, under IET's proposal "the court may have to wait for the response to get a brief that addresses the heart of the parties' dispute." *Id*.

Illumina's proposal also eliminates the risk of gamesmanship from overbroad designation challenges that impose unnecessary costs on the parties or the Court. Taken to the extreme, overbroad challenges "would require the court to make a … finding [of good cause] on a virtual document-by document basis, a process that Seventh Circuit has already found unnecessary" after an umbrella order is entered. *Alexander*, 2004 WL 1718654, at *3–4. IET speculates Illumina might "abuse" Highly Confidential designations. *Supra* at 8. But under both proposed Orders, parties may only designate materials Highly Confidential on the "good faith belief" they are the "most sensitive" in the case. Ex. A ¶ 2(b); Ex. B ¶ 2(b). Under such circumstances, courts have rejected speculation of over-designation as premature. *See Johnson*, 2011 WL 2550507, at *5; *Hecht v. BabyAge.com, Inc.*, 2010 WL 4683749, at *4 (M.D. Pa. 2010).

Accordingly, courts have recognized that Illumina's challenge proposal is both "fairest to the parties" and allows "the court most efficiently to resolve any disagreements about confidentiality." *Johnson*, 2011 WL 2550507, at *5 (quoting *Hecht*, 2010 WL 4683749, at *3 (endorsing a similar challenge process)). It should be ordered.

### C. Conclusion

For the reasons above, Illumina requests the Court enter a Confidentiality Order that: (1) prohibits a receiving party from disclosing Highly Confidential information to its employees, officers, or directors based solely upon a unilateral determination that it will or may use those individuals as experts or consultants; (2) requires a receiving party to identify its experts and consultants prior to disclosing Highly Confidential material to them , (3) requires the challenging party to move for judicial intervention if it wishes to overturn disputed designations.

15

Dated: November 8, 2019	INTERNATIONAL EQUIPMENT TRADING, LTD.


By  /s/ Katherine Grosh

One of Its Attorneys


Howard L. Teplinsky (hteplinsky@lgattorneys.com)
Katherine A. Grosh (kgrosh@lgattorneys.com)
LEVIN GINSBURG
180 N. LaSalle Street, Suite 3200
Chicago, IL 60601
(312) 368-0100

Attorneys for Plaintiff
INTERNATIONAL EQUIPMENT TRADING, LTD.

Dated: November 8, 2019	ILLUMINA, INC.


By  /s/ Anita Stork

One of Its Attorneys


Anita F. Stork (astork@cov.com) (*pro hac vice*)
Jeffrey M. Davidson (jdavidson@cov.com) (*pro hac vice*)
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA  94111-5356
(415) 591-6000

Jacob D. Koering (koering@millercanfield.com)
MILLER, CANFIELD, PADDOCK, AND STONE, P.L.C.
225 West Washington Street, Suite 2600
Chicago, Illinois  60606
(312) 460-4272

Attorneys for Defendant
ILLUMINA, INC.